## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| GALLOSO, INC., a California corporation, and BIG STATEMENT MARKETING, INC., a California corporation, on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br>        vs.<br><br>5967 VENTURES, LLC doing business as HUMBOLDT MERCHANT SERVICES, a Delaware corporation, and BMO BANK N.A., a National Banking entity,<br><br>     Defendants. | Case No. _____<br><br>Hon.:_____<br><br>Mag. Judge: _____<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs GALLOSO, INC. and BIG STATEMENT MARKETING, INC. (collectively, "**Plaintiffs**"), by and through their attorneys of record, bring this action on behalf of themselves and all others similarly situated against Defendants 5967 VENTURES, LLC, doing business as HUMBOLDT MERCHANT SERVICES, and BMO BANK N.A., formerly known as BMO HARRIS BANK, N.A., (collectively, "**Defendants**") and, based on personal knowledge with respect to those allegations that pertain to the named Plaintiffs, and based on information and belief with respect to those allegations that pertain to others similarly situated, allege and complain as follows:

## SUMMARY OF THE ACTION

1.      This is a class action that asserts claims for breach of contract against Defendants, who offer payment processing services to businesses to enable them to accept debit and credit card payments from their customers.

2.      Plaintiffs bring this action on behalf of a Class of businesses (defined below) that applied to and contracted with Defendants for payment processing services.

3.      This case arises out of Defendants' serial breaches of contract in connection with Defendants' assessment of so-called "(Manual) ETF – VIRP Closure" fees against Plaintiffs and the other Class members, without any contractual or other legal right to assess such a fee.

4.     By this action, and on behalf of the other Class members, Plaintiffs seek compensatory damages from Defendants based on Defendants' serial breaches of contract, along with injunctive relief barring Defendants from continuing to engage in these practices.

## THE PARTIES

5.     Plaintiff GALLOSO INC. ("**Galloso**") is a California corporation with its principal place of business in Sun Valley, California.

6.     Plaintiff BIG STATEMENT MARKETING, INC. ("**BSM**") is a California corporation with its principal place of business in Sun Valley, California.

7.     Defendant 5967 VENTURES, LLC, doing business as HUMBOLDT MERCHANT SERVICES ("**HMS**"), is a Delaware limited liability company with its principal place of business located at 1600 N Desert Dr #101, Tempe, AZ 85281.

8.     Defendant BMO BANK, N.A., formerly known as BMO HARRIS BANK, N.A. ("**BMO**"), is a National Association with its principal place of business located at 111 West Monroe, Chicago, IL 60603.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over the claims alleged herein pursuant to 28 U.S.C. § 1332(d) because this is a class action wherein the amount of  controversy exceeds $75,000, exclusive of interest and costs, and  at  least  one Class Member, including Plaintiffs, is a citizen of a state different from Defendants  to  establish minimal diversity.

10.     This Court has personal jurisdiction over Defendants pursuant to the written agreement between each of the Plaintiffs and other Class members, on the one hand, and Defendants, on the other hand, which expressly states that "[e]ach party expressly consents and agrees to the jurisdiction of any State or Federal court located within the County of Oakland, State of Michigan, for all purposes in connection with any suit between the parties arising out of or relating hereto."

11.     Venue lies within this district pursuant to 28 U.S.C. § 1391 because Defendants are subject to the Court's personal jurisdiction with respect to this action, and there is no other district in which this action may be brought against all Defendants.

## FACTUAL ALLEGATIONS

### A.     Background on Payment Processing

12.     In order to accept debit and credit cards ("**payment cards**") as payment over the Internet, a business (commonly referred to as a "**merchant**" in the payment processing industry) must first open a "**merchant account**" for payment processing services with a member bank of Visa Inc. and Mastercard International Incorporated (collectively, the "**Card Brands**").

13.     Such member banks have direct agreements with the Card Brands that enable them to process payments made by holders of payment cards issued by the Card Brands to purchase goods and services from "merchants" that contract with such member banks for payment processing services. This process is called

"**acquiring**," and the banks are commonly referred to as "**acquirers**," in the payments industry.

14.     Acquirers, in turn, may contract with third party organizations and sponsor them for registration with the Card Brands to provide processing-related services to merchants in support of the acquirer's merchant program (the "**Program**"). Once registered with the Card Brands under an acquirer's sponsorship, such third party organizations are generally referred to as "**Third Party Agents**" ("**TPAs**") in Visa parlance or "**Member Service Providers**" ("**MSPs**") in Mastercard parlance.

15.     In providing payment processing services to merchants, each acquiring bank is required to strictly comply—and ensure the strict compliance of its sponsored TPA/MSPs and merchants—with a comprehensive set of rules and standards promulgated and periodically updated from time to time by the Card Brands (the "**Card Brand Rules**") as a contractual condition of the bank's membership agreements with the Card Brands. *See Owner-Operator Indep. Drivers Ass'n, Inc. v. Concord EFS Inc.*, 59 S.W.3d 63, 66 (Tenn. 2001) ("Only banks and other similar financial institutions may become members of the Visa and Mastercard associations. These banks enter into membership agreements with Visa and Mastercard; the agreements incorporate the rules and regulations of Visa and Mastercard and allow the member banks to provide credit card processing services.").

16.    Applying these terms here, BMO is an acquiring bank that sponsors HMS for registration with the Card Brands as "**Independent Sales Organizations**" ("**ISO**"), which is a particular category of TPA/MSP that is authorized by virtue of its registration with the Card Brands to market payment processing services to merchants (such as Plaintiffs and the other Class members) to solicit their participation in BMO's Program, and perform certain types of merchant services on behalf of BMO in support of its Program, including application processing, customer service, and monthly statement preparation.

17.    Independent Sales Organizations like HMS commonly contract with other third party organizations (known as "**sales agents**") to solicit and refer prospective merchants on behalf of the ISO in return for a share of the fees collected by the bank and the ISO from the merchants' processing activity. Because such sales agents perform these services pursuant to a contractual relationship with the ISO rather than the acquirer, and are not sponsored by the acquirer for registration with the Card Brands, the scope of the services they provide is generally limited to the initial solicitation of the merchant, preparation of the merchant application package (including collection of signatures and required documentation) for presentation to the ISO for review, and facilitation of communication between the merchant and the ISO related to basic customer services issues. Sales agents are generally prohibited from using any form of merchant application and agreement other than the ISO's

standard, pre-approved forms for soliciting prospective merchants for participation in the relevant Program.

18.     As shall be more fully discussed below, HMS collected applicants for payment processing services offered by BMO through HMS via a sales agent called ARC Payments, whose principal at all times relevant herein was an individual named Michael Grindem.

19.     As the sponsor bank, BMO must at all times be entirely responsible for, and manage, direct and control, all aspects of its Program and Program-related services performed by TPA/MSPs like HMS, and establish and enforce all Program management and operating policies in accordance with the Card Brand Rules. As the sponsor bank, BMO must also approve all Program materials (including merchant applications and agreements) before their distribution by an ISO, and maintain prompt and unrestricted physical access to all original, executed merchant agreements. Mastercard Rule 7.2.8 (Program Materials); Mastercard Rule 7.6.3 (Access to Documentation).

20.     The Card Brand Rules mandate that a merchant agreement must include a separate or distinct fee disclosure (a "**Fee Disclosure**"), which must clearly and conspicuously detail the methodology by which each merchant fee (a "**Fee**") is calculated. For this purpose, a "**Fee**" means any charge by an acquirer to a merchant related to or arising from the merchant agreement, including but not limited to

transaction processing charges; authorization, clearing or settlement charges; the pass-through of any acquirer obligation to a third party; and, most importantly for the purposes of this lawsuit, any merchant agreement termination charge. Moreover, the method used to calculate each Fee listed in the Fee Disclosure, including any conditions, terms or contingencies that are or could be applicable to the Fee, must be clearly explained in plain terms. The acquirer must ensure that pricing schemes used by agents are clearly communicated in writing to the merchant and have the merchant's written acceptance. Proper disclosure of such fees is a mandatory condition precedent to an acquiring bank's right to charge such fees to a merchant. *See* Mastercard Rule 5.1.2 (Required Merchant Agreement Terms) for the U.S. Region; *see also* Visa Global Acquirer Standards, Rule 8.3 (Acquirer Responsibilities when Using Agents).

21.    According to custom and practice in the payments industry, all parties to a merchant agreement must strictly comply with all Card Brand Rules; and the Fee Disclosure is an integral part of each and every merchant application, which must clearly, conspicuously, and transparently disclose the complete scope of Fees to which a merchant will or may potentially be subject in connection with the resulting merchant agreement.

**B.**     **The HMS Merchant Application**

22.     Each of the Plaintiffs applied through an HMS sales agent for a merchant account with HMS and BMO by completing, signing and submitting a standard form HMS merchant application for participation in BMO's Program: Galloso completed, signed and submitted its application to HMS' sales agent, Arc Payments, through Arc Payments' sub-agent, The Web Rep LLC, on or about April 5, 2019; and BSM completed, signed and submitted its application to HMS' sales agent, Arc Payments, through Arc Payments' sub-agent, GOAT Payments, on or about November 23, 2022.

23.     Plaintiffs are informed and believe that each Class member also applied for one or more merchant accounts with HMS and BMO by completing, signing and submitting a standard form HMS merchant application to HMS' sales agent, Arc Payments, through Arc Payments' sub-agent The Web Rep LLC, GOAT Payments, or another of Arc Payments' sub-agents.

24.     Arc Payments, in turn, submitted the HMS Merchant Application of each of the Plaintiffs and other Class members to HMS for review and approval.

25.     Plaintiffs are informed and believes and based thereon alleges that, apart from merchant applicant-specific information, the standard form HMS merchant application signed by Plaintiffs and each of the other Class members is substantively identical in all relevant and material respects, as described herein. A

true and correct copy of the standard form HMS merchant application signed and submitted by Galloso (hereinafter, the "**HMS Merchant Application**") is attached hereto as **Exhibit 1** and incorporated herein by this reference as though set forth in full.

26.     The HMS Merchant Application makes the "**HMS Terms and Conditions**" available for review and download via a link to the HMS website and incorporates them by reference into the HMS Merchant Application, which together with the HMS Merchant Application, constitute the "**HMS Merchant Agreement**." A true and correct copy of the HMS Terms and Conditions downloaded from the HMS website is attached hereto as **Exhibit 2** and incorporated herein by this reference as though set forth in full.

27.     Each of the Plaintiffs and Class members agreed to the HMS Merchant Agreement by signing and dating the "Agreement" section of the HMS Merchant Application.

28.     HMS and BMO, in turn, entered into the HMS Merchant Agreement with Plaintiffs and each of the other Class members by approving each application and issuing a corresponding merchant account to each of them, thereby forming a contract between HMS and BMO, on the one hand, and Plaintiffs and each of the other Class members, on the other hand.

29.     The HMS Merchant Application requires the merchant-applicant and/or sales agent to input various information regarding the merchant, including legal name, DBA, location address, mailing address, federal tax ID, primary contact information, length of time in business, ownership type, site inspection info, beneficial owner details, and banking account information, among other items.

30.     The HMS Merchant Application includes a "Fees" section, which, pursuant to the Card Brand Rules, communicates the complete scope of agreed fees and charges that may be assessed by BMO pursuant to the HMS Merchant Agreement.

31.     The HMS Merchant Application includes a "Disclosure" section that identifies BMO as the "Member Bank" responsible for (i) extending acceptance of Visa products to the merchant, (ii) being a principal (signer) to the Merchant Agreement, (iii) educating the merchant on pertinent Visa operating regulations, (iv) all settlement funds, and (v) all funds held in reserve that are derived from settlement. The Disclosure also includes BMO's contact information and advises that BMO "is the ultimate authority should the Merchant have any problems."

32.     By way of explanation, the "settlement process" refers to the transfer of funds from the cardholder's account to the merchant's account, and "settlement funds" are the proceeds of a merchant's sales transactions, which are credited to the merchant account *after* deduction of the applicable Discount Rate, transaction fees

and reserve percentage, and then deposited by the acquiring bank into the merchant's demand deposit account.

33.     "Reserve funds" are deducted by the acquiring bank from a merchant's "settlement funds" (typically in an agreed upon percentage of 5 to 10%) and set aside in a "reserve account" to protect both the merchant and the acquiring bank against the risk of loss in connection with the merchant's processing activity, such as for "chargebacks" (where a cardholder or the card issuing bank disputes a charge) or Card Brand fines (amounts assessed by Visa or Mastercard against the acquiring bank based on a merchant's alleged violation of the Card Brand Rules). Conceptually, a "reserve account" is similar to a security deposit for an apartment rental or collateral for a loan.

34.     The Card Brand Rules prohibit an ISO from having access to any account for funds due to a merchant (settlement funds) or withheld from a merchant for chargebacks (reserves); and prohibit an acquirer from assigning or transferring to an ISO an obligation to pay or reimburse a merchant if the obligation arises from the merchant's processing activity. *See*, *e.g.*, Mastercard Rule 7.3 (Access to Merchant Account). Discount rates (or similar charges called by other terms) due to an acquirer from a merchant must be collected directly by the acquirer and not by the ISO. *See*, *e.g.*, Mastercard Rule 7.6.2 (Collection of Funds from a Merchant).

Thus, the HMS Merchant Agreement makes clear that BMO is solely responsible for holding, administering and controlling all settlement and reserve funds.

35.    Section 13 of the HMS Terms and Conditions allows BMO to establish a Reserve Account to ensure BMO's recovery of any liabilities owed to it by merchant pursuant to the HMS Merchant Agreement; but also obligates BMO to "use commercially reasonable efforts to return any funds held in the Reserve Account to Merchant after all amounts owed to [BMO] and HMS have been collected…"

36.    The HMS Merchant Agreement provides for Michigan law and personal jurisdiction in Michigan, and requires that any action or dispute arising from or related to the HMS Merchant Agreement must be brought exclusively in a court of competent jurisdiction in Michigan.

### C.    The Payment Processing Relationship

37.    Each of the Plaintiffs and other Class members agreed to the terms of the HMS Merchant Agreement by signing the HMS Merchant Application and submitting it to HMS and BMO through HMS' sales agent, Arc Payments, and its sub-agents, and HMS and BMO accepted the terms of the HMS Merchant Agreement and entered into a binding contract with each of the Plaintiffs and other Class members by approving each application and issuing a merchant account to each of them.

38.     Throughout the active term of each HMS Merchant Agreement, each of the Plaintiffs and other Class members submitted sales transactions through its respective merchant account for processing by HMS and BMO.

39.     Throughout the active term of each HMS Merchant Agreement, HMS and BMO set aside a percentage (typically, ten percent) of the settlement funds from the daily batch activity of each of the Plaintiffs and other Class members to hold and maintain as "reserves" to secure HMS and BMO against the risk of loss in connection with each merchant's processing activity.

40.     Throughout the active term of each HMS Merchant Agreement, HMS and BMO caused monthly billing statements (commonly referred to as "**merchant statements**") to be sent or made available to each of the Plaintiffs and other Class members summarizing each merchant's processing activity for the corresponding month, including the total count and volume of Sales, Credits, and Debit transactions; Reserve Percentage and Reserve Held; Discount Fees and Other Fees, including Merchant Authorizations, and Miscellaneous Fees such as Address Verification Fees and Chargeback Fees; and Batch Summary, summarizing the transaction count, volume and reserve withholding on a daily basis. For those Class members on HMS' proprietary EPX platform ("**EPX**"), HMS provided this information directly in the form of monthly "**Merchant Statements**."

41.     After each of the Plaintiffs and other Class members had processed with HMS and BMO for a period of time (ranging from months to years), HMS and BMO terminated the HMS Merchant Agreement with each of the Plaintiffs and other Class members. HMS and BMO terminated the HMS Merchant Agreement with: Galloso on February 16, 2024; and BSM on November 7, 2023.

42.     After all "trailing" (*i.e.* post-termination) chargeback activity on the corresponding merchant account had ended and all associated risk of loss had already passed, HMS and BMO assessed a three-to-five figure "(Manual) ETF – VIRP Closure" fee against the merchant's reserves, thereby consuming the entirety of the merchant's reserves in most if not all cases. For example, HMS and BMO applied a "(Manual) ETF – VIRP Closure" fee of $12,398.02 against Galloso's reserve, and of $12,400.32 against BSM's reserve, thereby zeroing out each Plaintiff's reserves.

43.     No such fee is communicated in the Fee Disclosure, and the HMS Merchant Agreement does not provide for any such fee.

## CLASS ALLEGATIONS

44.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs state as follows:

### A.    Definition of the Class

45.     Plaintiffs bring this class action on behalf of themselves and on behalf of the following proposed Class, initially defined as follows:

All businesses or entities who have contracted with HMS and BMO in the United States by executing the HMS Merchant Application and who were subsequently charged any fees not authorized by the HMS Merchant Agreement (the "**Class**").

46.     Plaintiffs reserve the right to redefine the class definition prior to class certification and after having the opportunity to conduct discovery.

**B.     The Class Satisfies the Requirements of Rule 23**

47.     This action is properly brought as a class action under Rule 23 for the following reasons:

(a)     **Numerosity:** The Class is so numerous and geographically dispersed throughout the United States that the joinder of all Class members is impracticable.  While Plaintiffs do not know the exact number and identity of the members of the Class, Plaintiffs are informed and believe that there are more than 100 members in the Class. The precise number of members in the Class may be ascertained through discovery.

(b)     **Commonality and Predominance:** There are questions of law and fact common to the Class which predominate over any questions that may affect particular members of the Class. Such common questions of law and fact include, but are not limited to:

(i)     Whether HMS and BMO breached the HMS Merchant Application by charging members of the Class a "(Manual) ETF – VIRP Closure" fee.

16

(c)     **Typicality:** Plaintiffs' claims are typical of the claims of the other members of the Class. Plaintiffs and the other members of the Class have been injured by the same wrongful practices of Defendants. Plaintiffs' claims arise from the same practices and conduct that give rise to the claims of each of the other members of the Class and are based on the same legal theories.

(d)     **Adequacy of Representation:** Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have no interest antagonistic to the interests of the other members of the Class, and Plaintiffs have retained attorneys experienced in payments law, class actions, and complex business litigation.

(e)     **Superiority:** A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

(i)     This action will promote an orderly and expeditious administration and adjudication of the claims of the Class; economies of time, effort and resources will be fostered; and uniformity of decisions will be ensured;

(ii)     Without a class action, members of the Class will continue to suffer damages, and Defendants' violations of law will proceed without remedy while Defendants continue to reap and retain the substantial proceeds of their wrongful conduct;

(iii)    Plaintiffs do not know of any difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action; and

(iv)    Finally, as the damages suffered by some of the individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.

48.    Defendants have, or have access to, address information for each of the members of the Class, which may be used for the purpose of providing notice of the pendency of this class action.

49.    Plaintiffs seek damages and equitable relief on behalf of the Class on grounds generally applicable to the entire Class.

50.    In the alternative, common questions of fact and law are appropriate for issue certification on behalf of the proposed Class.

51.    **Application of Michigan Law:** Michigan law should be applied to the Class because the HMS Merchant Agreement provides for Michigan choice of law and forum, stating: "This Agreement shall in all respects be interrupted (sic), governed, constructed and enforced by and under the laws of the State of Michigan. Each party expressly consents and agrees to the jurisdiction of any State or Federal

court located within the County of Oakland, State of Michigan, for all purposes in connection with any suit between the parties arising out of or relating hereto."

## FIRST CLAIM FOR RELIEF

### Breach Of Contract

### (By Plaintiffs Against HMS And BMO)

52.     Plaintiffs re-allege and hereby incorporate herein by this reference as though set forth in full each of the allegations contained in the preceding paragraphs of this Complaint.

53.     This cause of action is brought by Plaintiffs on behalf of all Class members.

54.     The HMS Merchant Agreement is a valid and enforceable written contract between each of the Plaintiffs and other Class members, on the one hand, and HMS and BMO, on the other hand.

55.     Each of the Plaintiffs and other Class members agreed to the HMS Merchant Agreement by signing the standard form HMS Merchant Application and submitting it to HMS and BMO through HMS' sales agent Arc Payments and its sub-agents to apply for merchant services through BMO's Program; and HMS and BMO manifested their consent and agreement to the HMS Merchant Agreement by approving the application of each of the Plaintiffs and other Class members for

participation in BMO's Program and issuing a corresponding merchant account to each of them.

56.     Each of the Plaintiffs and other Class members fully and faithfully performed all conditions, terms, covenants and agreements owed to HMS and BMO under the HMS Merchant Agreement. To the extent that Plaintiffs and the other Class members owed any other obligation to HMS and BMO under the HMS Merchant Agreement, each such Plaintiff's or other Class member's performance of such other condition, term, covenant or agreement has been excused, waived, or rendered impossible by HMS and BMO.

57.     The HMS Merchant Agreement does not disclose or provide for any "(Manual) ETF – VIRP Closure" fee, and neither Plaintiffs nor the other Class members ever accepted in writing, or otherwise consented to, a "(Manual) ETF – VIRP Closure" fee being applied against its merchant account and deducted from its reserves.

58.     HMS and BMO have materially breached the HMS Merchant Agreement by charging Plaintiff and each of the other Class members a three-to-five figure "(Manual) ETF – VIRP Closure" fee without any right to do so under the HMS Merchant Agreement.

59.     BMO has materially breached its duty under the HMS Merchant Agreement, and the Card Brand Rules incorporated by reference into the HMS

Merchant Agreement, to hold, administer and control all reserve funds derived from settlement of each of the Plaintiffs' and other Class members' sales transactions by allowing HMS to take possession of their respective reserves as a so-called "(Manual) ETF – VIRP Closure" fee even though the HMS Merchant Agreement does not provide for any such fee.

60.     As a direct and proximate result of HMS and BMO's material breach of the HMS Merchant Agreement, as described above, each of the Plaintiffs and other Class members has been damaged and will continue to incur additional damages, in an amount to be proven at trial. Such damages are clearly ascertainable both in nature and in origin.

## SECOND CLAIM FOR RELIEF
### <ins>Unjust Enrichment</ins>
### (By Plaintiffs Against HMS And BMO)

61.     Plaintiffs re-allege and hereby incorporate herein by this reference as though set forth in full each of the allegations contained in the preceding paragraphs of this Complaint.

62.     This cause of action is brought by Plaintiffs on behalf of all Class members.

63.     This claim is brought in the alternative to the Breach of Contract claim (Count 1).

64.     HMS and BMO have received and retained a benefit from Plaintiffs and Class members and inequity has resulted.

65.     HMS and BMO have benefitted from improperly retaining these fees that they are not authorized to retain.

66.     Thus, Plaintiffs have conferred a benefit on HMS and BMO and it is inequitable for HMS and BMO to retain these benefits, which they have done so knowingly.

67.     The amount of HMS and BMO's unjust enrichment are clearly ascertainable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and each of the members of the Class, respectfully requests that the Court:

1.     Certify this action as a class action, proper and maintainable pursuant to Federal Rule of Civil Procedure 23, appoint Plaintiffs as representatives of the Class, and designate Plaintiffs' counsel as counsel for the Class;

2.     Award Plaintiffs and the Class compensatory damages for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial;

3.     Grant injunctive relief prohibiting Defendants from continuing to engage in the wrongful acts and practices alleged herein;

4.      Award Plaintiff and the Class pre- and post-judgment interest at the

maximum legal rate;

5.      Award costs and attorneys' fees; and

6.      Grant all other such relief as it deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS.**

DATED: April 16, 2025.

/s/ E. Powell Miller
E. Powell Miller (P39487)
Dennis A. Lienhardt, Jr. (P81118)
**THE MILLER LAW FIRM, P.C.**
211 W. Fort St., Suite 705
Detroit, MI 48226
Telephone: (248) 845-1350
Facsimile: (248) 652-2852
epm@millerlawpc.com
dal@millerlawpc.com

Eugene Rome
Bradley O. Cebeci
**ROME LLP**
2029 Century Park East, Suite 450
Los Angeles, California 90067
Telephone: (310) 282-0690
Facsimile: (310) 282-0691
ERome@romellp.com
BCebeci@romellp.com

*Attorneys for Plaintiffs and the Putative Class*